**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| SANDRA CRENSHAW, | § | |
|                 Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | 3:14-CV-02792-D-BK |
| | § | |
| CITY OF DALLAS, | § | |
|                 Defendant. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b) and *Special Order 3*, this case was automatically referred to the United States Magistrate Judge. The Court granted Plaintiff's motion to proceed *in forma pauperis*, but did not issue process pending preliminary screening. For the reasons that follow, this case should be summarily dismissed.

**I. BACKGROUND**

On August 4, 2014, Plaintiff filed a complaint against Defendant the City of Dallas, asserting civil rights violations under 42 U.S.C. § 1983, stemming from her arrest for theft of a motor vehicle on August 3, 2012.[1] [Doc. 3 at 1-2]. Her complaint alleges in its entirety:

> On Aug 4, 2014 City of Dallas Police Officers falsely arrested Plaintiff for theft of a rental car in spite of evidence presented orally and writing to DPD of bank statements and certified correspondence that Plaintiff was involved in a civil dispute over extension of reservations and method of payment. At time of arrest Plaintiff asked to be taken in custody in the basement parking garage of the Dallas Public Library and she asked to be handcuffed while lying down in the back seat to avoid public view. DPD exited garage, immediately pulled over, open[ed] the back door, abandoned, the prisoner to give an interview, and allow[ed] TV cameras to enter the squad [car] to shoot photos of prisoner in handcuffs. Plaintiff

---

[1] Although the complaint and answers to the Court's questionnaire identify both August 4, 2012 and August 4, 2014, as the date of her arrest, the Dallas County website confirms Plaintiff was arrested for theft of a motor vehicle on August 3, 2012. *See State v. Crenshaw*, No. F12-58458 (Criminal District Court No. 3).

> asked to be transported immediately in squad car but DPD held her in 100 degree for over 30 minutes trying to get her to get out of car into an ambulance. DPD violated Plaintiff's right to assumption of innocence, right to refuse medical treatment and transport in an EMS vehicle. Inviting the press was not part of the arrest process and served no legal process except for public humiliation at expense of prisoner's health.

[Doc. 3 at 1].

In answer to the Court's questionnaire, Plaintiff maintains the "Dallas Police and Fire colluded with the media to publicize arrest of Plaintiff without the required clearly defined government purpose." [Doc. 9 at 1]. She also "challenge[s] the constitutionality of the perp walk doctrine." [Doc. 9 at 4]. Plaintiff avers:

> Police arrested Plaintiff out of public view at her request in the base[ment] of the Dallas library without event. Plaintiff hid facedown in seat.
>
> Immediately after leaving basement, arresting officer stopped vehicle on the street & told Plaintiff that he forgot to read her Miranda Rights. He then turned off engine, of car motor. Plaintiff looked out window and saw news reporter. Plaintiff her face down again and urged arresting officer to "Hurry, before I have a panic attack."
>
> Officer then exited the patrol car and opened the rear passenger door and advised Plaintiff that he turned motor off because there was no air conditioning in the car and left the door open while he gave an interview to news reporter. Plaintiff wiped sweat on her shoulder, spotted TV camera in the back seat of the car with her. Plaintiff screamed for she was startled.
>
> Minutes later a Police Lt. Anthony Williams exited the basement, observed car door open with Plaintiff's face ashen from perspiration. He insisted upon calling on ambulance stating "I do not want a person to have a heart attack in my police car."
>
> Dallas Police Policy dictates that if a transporting officer finds that a subject in his/her custody is in need of medical attention, the officer is directed to transport person to hospital.
>
> Baylor Hospital is located less than 2 miles from site of arrest.
>
> Fire Dept reports that medic was present when ambulance arrived. Plaintiff vital signs were good with elevated blood pressure, and that she was sweating profusely.

>The weather on August 4, 2012 was over 100 degrees downtown.
>
>Plaintiff advised Officers that her blood pressure runs "high normally" and that her doctors advise her to call 911 at 200.  Further she advised that her handcuffs were too tight contributing to her blood pressure elevation.  Officers advised paramedics they could not remove handcuffs in spite of creating the risk of stroke and heart attack.
>
>Plaintiff requested immediate transport to jail.  Paramedics then ruled Plaintiff had altered mental status and forcibly pulled Plaintiff out of police emergency patrol vehicle to a fire EMS ambulance.
>
>Plaintiff requested that an officer pull her knit cap over her face and turn her body away from the swarm of media cameras.
>
>Immediately police and fire dragged Plaintiff from the Patrol car and placed her on a gurney facing the media, a camera man motioned for the police/paramedics to remove her hat from her face, the officers then removed hat and photo was public in Dallas Morning news and broadcast on T.V. though Plaintiff claimed she was having a panic attack in violation of reporting Plaintiff's medical conditions.  Further they reported to medic the ambulance was transporting to Baylor.
>
>Plaintiff is self-employed.  Police requested an arrest warrant at the home of one of her clients and upon the act being brought to the attention of Plaintiff the City refused to amend the public records violating Plaintiff's privacy rights and that of her client.

[Doc. 9 at 1-3].

In addition to seeking $1 million in monetary damages for pain and suffering, Plaintiff requests the Court to "declare that the conduct of the police officer was unconstitutional . . . that [it amounted to] malicious prosecution that violat[ed] her civil rights . . . that the conduct was cruel and harsh punishment . . . [and that it] violated her privacy rights."  [Doc. 9 at 4].

A review of the Dallas County website reflects that on July 25, 2012, a Dallas County magistrate issued an arrest warrant for Plaintiff based on the sworn statement of Police Officer J. S. Byerly, who believed plaintiff had committed the offense of theft of a motor vehicle when she refused to return a Budget rental car.  *See State v. Crenshaw*, No. F12-58458 (Criminal District

Court No. 3, Jul. 25, 2012). On August 4, 2012, the day following her arrest, Plaintiff appeared before a Dallas County magistrate, who informed her of the theft charge and released her on a $500.00 bond. *Id.* On October 3, 2012, a grand jury indicted Plaintiff for theft of a motor vehicle, but on October 25, 2013, the charge was dismissed after the State determined Plaintiff was mentally ill and unable to make restitution due to her indigent status. *Id.*

## II. ANALYSIS

Because Plaintiff is proceeding *in forma pauperis*, the complaint is subject to screening under 28 U.S.C. § 1915(e)(2)(B). That statute provides for *sua sponte* dismissal of a complaint if the Court finds that it (1) is frivolous or malicious, (2) fails to state a claim upon which relief may be granted, or (3) seeks monetary relief against a defendant who is immune from such relief. A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327.

The Court liberally construes Plaintiff's complaint, as supplemented by the answers to the questionnaire, with all possible deference due a *pro se* litigant. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (allegations of a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers). Even under this most liberal construction, however, Plaintiff's allegations lack any legal basis and should be dismissed as frivolous.

The City of Dallas, as a local governmental entity, cannot be held liable under a *respondeat superior* theory. *See Monell v. Dept. of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978) ("a local government may not be sued under [section 1983] for an injury inflicted solely by its employees or agents."). Plaintiff's pleadings are devoid of any allegations identifying a policy, custom, or a persistent and widespread practice of the City of Dallas that resulted in a

constitutional violation. [Doc. 9 at 6]. When asked to identify a custom or policy, Plaintiff merely states: "Sending out press releases in violation of Plaintiff's presumption of innocence." [Doc. 9 at 6]. That notwithstanding, Plaintiff's claims are meritless as set out in details below.

False Arrest

Plaintiff asserts she was falsely arrested by a Dallas police officer for theft of a rental car in violation of her constitutional rights. To prevail on such a claim, Plaintiff must show that the police officer did not have probable cause to arrest her. *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010) (citation omitted). An officer has probable cause "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Id.* (citation omitted).

Here, since Plaintiff's arrest was "made under authority of a properly issued warrant, the arrest is simply not a false arrest." *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982). The warrant under which Plaintiff was arrested and detained met constitutional standards and Plaintiff does not contend otherwise. *See Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 280 (5th Cir. 1992) (holding police officer had probable cause to arrest when arrest warrant was facially valid); *see also Baker v. McCollan*, 443 U.S. 137, 142-143 (1979) (requiring a fair and reliable determination of probable cause as a condition for deprivation of liberty).[2] Plaintiff states that she presented "evidence . . . orally and [in] writing to DPD" that she "was involved in a civil dispute" with the rental car company "over extension of reservations and method of payment." [Doc. 3 at 1]. Yet, her assertion, even under the most deferential review, does not

---

[2] Under Texas law, magistrates have the authority and the duty to issue such process. *See* Tex. Code of Crim. Proc. arts. 2.09, 2.10, 15.01, 15.03. *See also Barnes v. Madison*, 79 F. App'x 691, 702 (5th Cir. 2003).

claim any intentional misrepresentation or omission in the warrant application. *See Johnson v. Norcross*, 565 Fed. Appx. 287, (5th Cir. 2014) ("intentional misrepresentations in warrant applications and material omissions from the same may give rise to a Fourth Amendment claim"). Moreover, the day after her arrest, Plaintiff appeared before a magistrate and, shortly thereafter, she was indicted on a charge related to the August 2012 arrest. Because these ensuing events broke the chain of causation for any false arrest, Plaintiff's false arrest claim is foreclosed and should be dismissed as frivolous. *See Cuadra*, 626 F.3d at 813 (a court appearance or grand jury indictment breaks the chain of causation for an allegedly false arrest, "insulating the initiating party.").

Malicious Prosecution

Insofar as Plaintiff alleges Defendant violated her Constitutional rights by engaging in malicious prosecution, her claim fails as a matter of law. "[A] freestanding 42 U.S.C. § 1983 claim based solely on malicious prosecution [i]s not viable." *See Cuadra*, 626 F.3d at 812-813. Rather, the plaintiff "must allege 'that officials violated specific constitutional rights in connection with a malicious prosecution.'" *Id.* at 812 (quoting *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003)). Here, Plaintiff fails to make any specific claims as to how the Defendant or any police officer allegedly violated her constitutional rights. Moreover, the complaint is devoid of allegations reasonably suggesting any possible constitutional violation in connection with her alleged malicious prosecution.

In addition, as previously noted, the grand jury indictment broke the chain of causation for an allegedly false arrest or unreasonable seizure claim, "insulating the initiating party." *Cuadra*, 626 F.3d at 813. Thus, Plaintiff's mere allegation of "malicious prosecution," without

more, is insufficient to raise any potential Fourth Amendment violation. *Id.* Therefore, her claim is factually and legally frivolous.

Perp Walk, Public Humiliation, and Privacy Rights

Next, Plaintiff complains the arresting police officers orchestrated a "perp walk," instead of permitting Plaintiff to be arrested and transported to the Dallas County jail out of public view.³ However, the circumstances of Plaintiff's arrest are distinguishable from the kind of staged "perp walk" that has been held to violate the Fourth Amendment. In *Lauro v. Charles, 219 F.3d 202, 203-204, 211-213 (2nd Cir. 2000)*, the United States Court of Appeals for the Second Circuit held that a staged perp walk, in which a plaintiff was paraded in front of the press to be photographed and filmed two hours after being arrested to publicize police efforts and providing the press with "a dramatic illustration to accompany stories about the arrest," was unreasonable because it had no legitimate law enforcement purpose. In *Lauro*, "the press and the public were not viewing the actual event of [plaintiff] being brought to the police station, but rather, were offered a staged recreation of that event." *Id.* at 213.

Here, there was no staged recreation of the events surrounding Plaintiff's lawful arrest. The police officers also had the legitimate law enforcement purpose of transporting Plaintiff to the Dallas County jail for booking. *See Caldarola v. Cnty. of Westchester, 343 F.3d 570, 572, 575-577 (2d Cir. 2003)* (no Fourth Amendment violation as a result of county video of a "perp walk" that showed arrestee walking in parking lot to police car immediately following his lawful arrest; while arrestee possessed a privacy interest in not having his "perp walk" broadcast to the public, that privacy interest was outweighed by the County's legitimate government purposes).

---

³ Although Plaintiff's pleadings cite only to the Sixth Amendment [Doc. 3 at 2], her "perp walk" claim appears to be premised on an alleged violation of her Fourth Amendment right to be free from "unreasonable ... seizures." U.S. CONST. AMEND. IV. The United States Court of Appeals for the Fifth Circuit has not yet addressed the constitutionality of "perp walks."

Further, Plaintiff has not presented facts suggesting that she was paraded handcuffed in front of the media for the sole purpose being photographed and filmed. Indeed, the facts as posited by Plaintiff support a different conclusion. According to Plaintiff, the transporting officer stopped the car in order to read her the *Miranda* rights. [Doc. 3 at 1; Doc. 9 at 1]. And, although she claims that while stopped the officer also spoke to a reporter, Plaintiff remained face down in the police car, except for when she turned, startled that a reporter had climbed in the back seat to take her picture. [Doc. 9 at 2]. Ultimately, because her medical condition deteriorated (due to high blood pressure caused by stress and the day's high temperature), a decision was made to transfer her by ambulance. [Doc. 9 at 2]. But because Plaintiff was uncooperative, she had to be forcibly removed from the car, placed on a stretcher, and transferred to an ambulance. [Doc. 9 at 2]. Even under the most deferential review, Plaintiff's filings do not point to facts suggesting that she was subjected to a staged perp walk like that found to violate the Fourth Amendment in *Lauro*.

Next, Plaintiff complains of public humiliation and violation of her right to privacy as a result of the press being involved in her arrest. [Doc. 3 at 1; Doc. 9 at 4]. However, Plaintiff cannot claim a due process violation simply because she suffered injury to her reputation when her arrest was publicized and the media covered her forced removal from the police car and placement on a stretcher. "[R]eputation alone, apart from some more tangible interests such as employment, is [n]either 'liberty' [n]or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." *Paul v. Davis*, 424 U.S. 693, 701 (1976). Moreover, because arrests may be publicized, plaintiff does not have a right of privacy that prohibits the government from disseminating information regarding her arrest. *Id.* at 713; *see also Moore v. City of Grand Prairie*, No. 4:12-CV-0624-A, 2013 WL 1174457 (N.D. Tex., Fort Worth Div.

2013) (simply because plaintiff was embarrassed by her arrest does not mean that her rights under the Constitution were violated).

Plaintiff also maintains the arresting police officers "violated [her] right to . . . refuse medical treatment and transport in an EMS vehicle." [Doc. 3 at 1]. Plaintiff appears to challenge the police officers and paramedics' decision to transport her to the hospital, in lieu of the Dallas County jail, because she was suffering from high blood pressure. However, even under the most deferential review, her assertion does not rise to a constitutional violation. Accordingly, Plaintiff's claims are factually and legally frivolous.

### Conspiracy

Lastly, in answer to the questionnaire, Plaintiff maintains the "Dallas Police and Fire colluded with the media to publicize [the] arrest of Plaintiff without the required clearly defined government purpose." [Doc. 9 at 1]. Yet, by the mere mention of "collusion," Plaintiff has not pled an agreement between the Defendant and others to inflict a wrong or injury and an overt act that results in damages. *Crowe v. Lucas*, 595 F.2d 985, 993 (5th Cir. 1979); *Hale v. Harney*, 786 F.2d 688, 690 (5th Cir. 1986) (quoting *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982)) ("'Mere conclusory allegations of conspiracy cannot, absent reference to material facts,' state a substantial claim of federal conspiracy under 42 U.S.C. § 1983.")). Therefore, this claim is clearly baseless.

### III. LEAVE TO AMEND

Ordinarily, a *pro se p*laintiff should be granted leave to amend her complaint prior to dismissal. *See Brewster v. Dretke,* 587 F.3d 764, 767–68 (5th Cir. 2009). Here, even taking Plaintiff's factual assertions as true, her claims are fatally infirm. Thus, the Court concludes that granting leave to amend would be futile and cause needless delay.

**IV. SANCTION WARNING**

Plaintiff is no stranger to this Court. She has previously filed at least six civil actions, three of which were subsequently dismissed as frivolous or for failure to state a claim.[4] *See* Crenshaw v. Ewing, No. 3:14-CV-0872-K-BF, 2014 WL 3500132 (N.D. Tex. 2014) (claiming county party chair violated her civil rights by finding that she failed to residency requirements for placement on the ballot); Crenshaw v. Transicare, Inc., No. 3-10-CV-1861-O-BD, 2010 WL 5387619 (N.D. Tex. Dec. 6, 2010), recommendation accepted, 2010 WL 5209305 (N.D. Tex. Dec. 17, 2010) (suing various entities and mental health professionals involved in her involuntary commitment to a state mental hospital); Crenshaw v. Jones, No. 3:02-CV-953-H, 2003 WL 21662824 (N.D. Tex. July 14, 2003), recommendation accepted, No. 3:02-CV-953-H (N.D. Tex. Jul. 29, 2003) (suing several individuals, including a local justice of the peace, for allegedly orchestrating a media event surrounding her arrest for contempt of court that resulted in her loss of an election a few days later).

Given Plaintiff's filing history and the frivolous claims asserted in this case, Plaintiff should be warned that if she persists in filing frivolous or baseless claims, the Court may impose monetary sanctions and/or bar her from bringing any further action. *See* FED. R. CIV. P. 11(b)(2) and (c)(1) (providing for sanctions against *pro se* litigants or attorneys). Sanctions may be appropriate when a *pro se* litigant has a history of submitting multiple frivolous claims. Mendoza v. Lynaugh, 989 F.2d 191, 195-97 (5th Cir. 1993); *see also* Whitehead v. Food Max of Miss., Inc., 332 F.3d 796, 802-03 (5th Cir. 2003) (a violation of any provision of Rule 11(b)

---

[4] Plaintiff also filed three additional actions, which were dismissed for want of prosecution. *See Crenshaw v. Slaughter*, No. 3:13-CV-3432-BF (N.D. Tex. 2014) (with prejudice dismissal for failure to comply with a court order and appear at a show cause hearing); *Crenshaw v. Fain,* No. 3:03-CV-1015-R (N.D. Tex. 2004) (without prejudice dismissal for want of prosecution); *Crenshaw v. Mfume*, No. 3:03-CV-1110-N (N.D. Tex. 2003) (same).

justifies sanctions).  *Pro se* litigants have "no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir.1986).  Moreover, litigants who abuse the judicial process are "not entitled to sue and appeal without paying the normal filing fees -- indeed, are not entitled to sue and appeal, period." *Free v. United States*, 879 F.2d 1535, 1536 (7th Cir. 1989).

## V. RECOMMENDATION

For the foregoing reasons, it is recommended that this action be summarily **DISMISSED** with prejudice as frivolous.  *See* 28 U.S.C. § 1915(e)(2)(B).  It is further recommended that Plaintiff be **WARNED** that sanctions may be imposed if she persists in filing frivolous or baseless actions.

SIGNED October 16, 2014.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

   A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE